IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DANIEL BUCY,

                    Plaintiff,

vs.                                    Case No. 09-1223-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the

Commissioner of Social Security denying the plaintiff disability

insurance benefits.  The matter has been fully briefed by the

parties.

## I.  General legal standards

     The court's standard of review is set forth in 42 U.S.C.

§ 405(g), which provides that "the findings of the Commissioner

as to any fact, if supported by substantial evidence, shall be

conclusive."  The court should review the Commissioner's decision

to determine only whether the decision was supported by

substantial evidence and whether the Commissioner applied the

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984

(10th Cir. 1994).  Substantial evidence requires more than a

scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the

national economy.   42 U.S.C. § 423(d).

    The Commissioner has established a five-step sequential

evaluation process to determine disability.  If at any step a

finding of disability or non-disability can be made, the

Commissioner will not review the claim further.  At step one, the

agency will find non-disability unless the claimant can show that

he or she is not working at a "substantial gainful activity."  At

step two, the agency will find non-disability unless the claimant

shows that he or she has a "severe impairment," which is defined

as any "impairment or combination of impairments which

significantly limits [the claimant's] physical or mental ability

to do basic work activities."  At step three, the agency

determines whether the impairment which enabled the claimant to

survive step two is on the list of impairments presumed severe

enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to

step four, at which the agency assesses whether the claimant can

do his or her previous work; unless the claimant shows that he or

she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth

and final step requires the agency to consider vocational factors

(the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On January 8, 2009, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 13-25).  Plaintiff alleges that he has been disabled since February 2, 2007 (R. at 13). Plaintiff is insured for disability insurance benefits through March 31, 2012 (R. at 15).  At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since February 2, 2007, the alleged onset date (R. at 15).  At step two, the ALJ found that plaintiff had the following severe

impairments: bilateral shoulder impairment and obesity (R. at 15). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 17). After determining plaintiff's RFC (R. at 18), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 23). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23-24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III. Did the ALJ and the Appeals Council fail to consider all the medical opinions expressed by Dr. Davis, a treating physician?**

On January 16, 2008, the following information appears in the medical records of Dr. Davis, plaintiff's treating physician:

> The patient is still having problems with his disability, so he is unable to work at all...
>
> Shoulder exam is still consistent with impingement and limitation of motion. The patient has little strength.

(R. at 311). On March 6, 2008, the treatment notes of Dr. Davis indicate the following:

> He is unable to do any writing. He is disabled due to the tremor and shoulder problems that he has been having...Neurological exam shows persistent essential tremor.

(R. at 312).

Dr. Davis then wrote the following letter on December 15, 2008:

> Regarding Mr. Daniel Bucy, who I have taken care of for many years, I have the following comments regarding his health and his disabilities:
>
>> 1.  Due to his severe fatigue and constant tremors, I would suspect that he is not able to stand or walk for more than two hours a day.
>>
>> 2.  Again, because of his chronic tremors, and in addition to his rather severe shoulder disabilities and pain, he is unable to lift more than ten pounds on a frequent basis.
>>
>> 3.  Because of his continuing severe fatigue, he has the need to rest in a reclining position more than twenty percent of the day.
>>
>> 4.  Because of the multiplicity of his impairments, it is likely that he will miss more than three or more days a month of work.
>>
>> 5.  Due to his multiple impairments, including his pain, tremors, and fatigue, and limited shoulder motion, he will need frequent and unscheduled work breaks during an 8 hour work period.
>>
>> 6.  Due to these multiple impairments, he will have impairment of overall alertness, dexterity, coordination and ability to think clearly, especially due to his chronic pain medication.
>
> As my records have indicated, and other consultants have indicated, Mr. Bucy's

>        primary impairment is shoulder disability
>        accompanied with chronic severe pain that
>        requires daily pain medication and persistent
>        tremors in his upper extremities, making it
>        difficult to function as far as his motor
>        capacities.  Finally, because of his constant
>        pain and pain medication, he suffers from
>        fairly severe fatigue and would be unable to
>        hold a job, even those of a sedentary nature.

(R. at 334).

At the time of his decision, the ALJ had before him the treatment records of Dr. Davis, including the treatment notes dated January 16, 2008 and March 6, 2008.  However, the December 15, 2008 letter from Dr. Davis was not added to the record until after the ALJ decision, and prior to the decision of the Appeals Council (R. at 5).

Despite the fact that Dr. Davis had opined in his treatment notes of January 16, 2008 and March 6, 2008 that plaintiff was disabled, the ALJ never mentioned those opinions in his decision. An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  It is clear legal error to ignore a medical

opinion.  <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir.

Feb. 4, 2005).

 After the ALJ decision, plaintiff submitted to the Appeals

Council the December 15, 2008 letter from Dr. Davis.  The Appeals

Council received this evidence and made it part of the record (R.

at 5).  In the Appeals Council decision of May 19, 2009, it

stated the following regarding the letter from Dr. Davis:

> However, the letter dated December 15, 2008
> from Dr. Davis reporting that you have
> significant standing, walking, and lifting
> restrictions as well as the need for frequent
> rest periods due to fatigue, is not supported
> by any detailed clinical findings by this
> medical source or the other records.  Another
> new report from Dr. Schwertfeger in March
> 2009 contains detailed clinical findings
> describing your tremors as very minimal and
> mild with slight effect on functions and
> normal gait.  We find that this information
> does not provide a basis for changing the
> Administrative Law Judge's decision.

(R. at 1-2).

 The Appeals Council rejected the opinions expressed by Dr.

Davis in his letter of December 15, 2008 because they were not

supported by the clinical findings of Dr. Davis or any other

medical source.  However, the Appeals Council made no reference

to the opinions expressed by Dr. Davis in his treatment notes of

January 16, 2008 or March 6, 2008.

 It is clear legal error to ignore medical opinions.  The ALJ

clearly erred by ignoring the medical opinions of Dr. Davis

contained in his treatment notes of January 16, 2008 and March 6,

2008.

Furthermore, the Appeals Council, which considered the December 15, 2008 letter from Dr. Davis, made no mention of the opinions of Dr. Davis expressed on January 16, 2008 or March 6, 2008. There is no evidence that either the ALJ or the Appeals Council considered the opinions of Dr. Davis in the January 16, 2008 or March 6, 2008 treatment notes. Although the Appeals Council stated that no detailed "clinical" findings support the limitations expressed by Dr. Davis in his letter of December 15, 2008,[1] the treatment notes of January 16, 2008 and March 6, 2008 indicate that plaintiff was examined by Dr. Davis on both visits. Dr. Davis examined plaintiff's shoulder and found impingement and limitation of motion. Dr. Davis also found that plaintiff has little strength; Dr. Davis further indicated that a neurological exam showed persistent essential tremor. Dr. Davis concluded that plaintiff was disabled due to the tremor and shoulder problems (R. at 311-312). These opinions in the treatment notes are consistent with the statement of Dr. Davis on December 15, 2008 that plaintiff's primary impairment is severe shoulder disability accompanied with chronic severe pain and persistent tremors in his upper extremities making it difficult for him to function as far as his motor capacities (R. at 334). Contrary to

_____

[1]"Clinical" is defined as having to do with the examination and treatment of patients. Webster's New World Medical Dictionary (3rd ed., 2008 at 87).

the assertion of the Appeals Council, the clinical or examination findings in the treatment notes of Dr. Davis are consistent with, and therefore provide support for, the opinions he set forth in his letter of December 15, 2008.

The court should not engage in the task of weighing evidence in the first instance, Clifton v. Chater, 79 F.3d 1007 at 1009; Neil v. Apfel, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998), but should review the Commissioner's decision only to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. Clifton, 79 F.3d at 1009. Because of the clear error by the ALJ in failing to consider medical opinion evidence of disability from a treating physician, the court won't speculate as to the weight that the ALJ might have accorded that evidence had he considered it. Likewise, the court won't speculate as to the weight that the Appeals Council might have accorded the letter of December 15, 2008 had they clearly considered it in light of the treatment notes by Dr. Davis on January 16, 2008 and March 6, 2008. Contrary to the statement of the Appeals Council that the opinions of Dr. Davis on December 15, 2008 are not supported by any detailed clinical findings from Dr. Davis or any other medical source, the treatment notes on January 16 and March 6, 20083 set forth examination or clinical findings, and the opinion of Dr. Davis that plaintiff was disabled due to tremors and

10

shoulder problems (R. at 311-312).  On December 15, 2008, Dr.

Davis similarly stated that plaintiff's primary impairment is

severe shoulder disability accompanied with chronic severe pain

and persistent tremors in his upper extremities making it

difficult to function as far as his motor capacities (R. at 334).

Thus, it is not at all clear to the court that the Appeals

Council considered the letter from Dr. Davis on December 15, 2008

in light of these treatment notes from Dr. Davis.  This case

shall therefore be remanded in order for the ALJ to consider the

opinions of Dr. Davis in his treatment notes and in the letter of

December 15, 2008.

Plaintiff also asserts that the ALJ erred by giving

controlling weight to Dr. Hearon's opinion precluding overhead

reaching, but not giving controlling or substantial weight to Dr.

Hearon's opinion limiting plaintiff to only lifting up to 10

pounds on his right side (R. at 21-22, 295).  The ALJ relied on

plaintiff's testimony that he could lift up to 20 pounds (R. at

43) in support of his finding that plaintiff could perform light

work (R. at 22, 18).[2]  The court will not reweigh the evidence or

substitute its judgment for that of the Commissioner.  Hackett v.

Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v.

Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although

---

[2]Light work involves lifting no more than 20 pounds at a
time.  20 C.F.R. § 404.1567(b).

it is not unreasonable for the ALJ to rely on plaintiff's testimony on this point, on remand, the ALJ should also take into consideration the opinion of Dr. Davis, who limited plaintiff to lifting no more than 10 pounds (R. at 334).[3]

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 18th day of August, 2010, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

------

[3]The Appeals Council stated that there was no medical evidence supporting the opinion of Dr. Davis that plaintiff had a lifting limitation of 10 pounds (R. at 2). However, Dr. Hearon provided some support for that opinion when he opined that plaintiff was limited to lifting no more than 10 pounds on his right side (R. at 295).